## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KENNETH NATHANIEL RUDOLPH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:12-cv-2934-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>MEMORANDUM OPINION</u>

Plaintiff Kenneth Nathaniel Rudolph ("Rudolph") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Rudolph, whose past relevant experience includes work as a machine operator and forklift operator, filed an application for Title II disability insurance benefits with a protective filing date of December 12, 2006, alleging a disability onset date of October 6, 2006, due to lower back pain and diabetes.  (R. 32, 36, 176).  After the

SSA denied Rudolph's claim, he requested a hearing before an ALJ.  (R. 119).  The

ALJ subsequently denied Rudolph's claim, (R. 92-102).  The Appeals Council granted

Rudolph's request for review, and remanded the case to an ALJ to clarify Rudolph's

past relevant work and RFC, (R. 105-06), and to determine whether a subsequent Title

XVI claim for Supplemental Security Income should be consolidated with Rudolph's

Title II claim.[1]  (R. 106).

On remand from the Appeals Council, a hearing was held before a different

ALJ on April 29, 2010, who subsequently found Rudolph was not disabled.  (R. 29-

36).  This decision became the final decision of the Commissioner when the Appeals

Council refused to grant review.  (R. 1-6).  Rudolph then filed this action for judicial

review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*,

672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal

standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*,

792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the

Commissioner's "factual findings are conclusive if supported by 'substantial

evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district

---

[1]  On remand, the ALJ found no reason for consolidating the claims.  (R. 36).

2

court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities

which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

> (1)  whether the claimant is currently unemployed;
>
> (2)  whether the claimant has a severe impairment;
>
> (3)  whether the impairment meets or equals one listed by the Secretary;
>
> (4)  whether the claimant is unable to perform his or her past work; and
>
> (5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

4

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Rudolph had not engaged in substantial gainful activity since October 6, 2006, and, therefore, met Step One.  (R. 33).  Next, the ALJ found that Rudolph satisfied Step Two because he suffered from the severe impairments of "low back pain without objectively identifiable etiology."  *Id*.  The ALJ then proceeded to the next step and found that Rudolph failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 34).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Rudolph has the residual functional capacity (RFC) "to perform the full range of medium work as defined in 20 CFR 404.1567(c)."  *Id.*  In light of his RFC, the ALJ held that Rudolph is "capable of performing past relevant work as a Machine Operator and Forklift Operator."  (R. 36).  Therefore, the ALJ found that Rudolph "has not been under a disability, as defined in the Social Security Act, from October 6, 2006, through the date of this decision."  *Id.*

## V.  Analysis

The court now turns to Rudolph's contentions that the ALJ erred by (1) not properly assessing the medical opinions in the record; (2) failing to consider

Rudolph's nonsevere impairments; and (3) departing from the administrative law of the case. *See* doc. 9 at 7-13. The court addresses each contention in turn.

A.    The ALJ's Assessment of the Medical Opinions

Rudolph's primary contention on appeal is that the ALJ improperly rejected the opinions of Dr. Edwin Moyo, one of his treating physicians. On December 16, 2008, Dr. Moyo completed a form indicating Rudolph would be able to lift and/or carry "50 pounds occasionally to 25 pounds frequently," and would be limited to a total of three hours sitting, and two hours combined standing and walking in an eight-hour workday. (R. 252). Dr. Moyo also indicated Rudolph had pain that would be distracting to the adequate performance of daily activities or work. (R. 250). Rudolph contends that Dr. Moyo's opinions establish that Rudolph is disabled.

In determining how much weight to give Dr. Moyo's opinion, the ALJ had to consider several factors, including whether Dr. Moyo (1) had examined Rudolph; (2) had a treating relationship with Rudolph; (3) presented medical evidence and explanation supporting his opinion; (4) provided an opinion that is consistent with the record as a whole; and (5) is a specialist. *See* 20 C.F.R. § 404.1527(c). If an ALJ "find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it will be given "controlling weight." 20 C.F.R. § 404.1527(c)(2).

Moreover, in this circuit, "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the evidence does not bolster the treating physician's opinion; a contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records. *Id.* If a treating physician's opinion is rejected, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion . . . and the failure to do so is reversible error." *Id.*

The ALJ gave no weight to the opinions of Dr. Moyo because "[t]hey appear to be conclusory and are not supported by the weight of the evidence in this case, including the claimant's own treatment records obtained from Dr. Moyo." (R. 35). Based on a review of the record, the court finds the ALJ's articulated reasons for rejecting Dr. Moyo's opinions are supported by substantial evidence. As the ALJ observed, Dr. Moyo's opinions are conclusory– i.e., he did not explain why Rudolph's condition limited him to three hours sitting and two hours walking/standing. Moreover, Dr. Moyo's opinions are inconsistent with his own treatment records, which "reflect generally nothing more than medication management of hypertension." (R. 33, 253-73). Dr. Moyo's treatment notes also show only normal musculoskeletal examinations, (R. 254, 262, 263, 264), and contain no diagnostic imaging of Rudolph's back. Therefore, Dr. Moyo's opinions are not "well-supported by

medically acceptable clinical and laboratory diagnostic techniques," as is required for them to be given controlling weight.  20 C.F.R. § 404.1527(c)(2); *see also Lewis*, 125 F.3d at1440 (good cause exists to reject an opinion when it is conclusory or inconsistent with the treating physician's own medical records).

In addition, the ALJ correctly rejected Dr. Moyo's opinions because they are inconsistent with other substantial medical evidence.  *See* 20 C.F.R. § 404.1527(c)(2) (to be given controlling weight, the treating sources opinions must not be "inconsistent with the other substantial evidence").  For example, treatment records from the VA Medical Center show negative findings on examination, and that Rudolph's back pain responded to treatment.  Specifically, these notes show Rudolph sought treatment on January 22, 2010, complaining of low back pain and requesting narcotics.  (R. 349). Rudolph had a negative SLR test on examination, was prescribed acetaminophen and ibuprofen for back pain, and was to be evaluated by physical therapy for a TENS unit. (R. 349-50).  When Rudolph presented for a follow-up visit on March 12, 2010, Dr. Phillip Johnson reported that "overall he feels better, but cont[inues] to have back pain."  (R. 337).  Dr. Johnson found negative SLR testing on examination, and remarked that Rudolph's back pain was "controlled with TENS unit, PT, ibuprofen, and tylenol."  (R. 337-38).  These treatment records support the ALJ's finding that Dr. Moyo's opinions are not supported by the weight of the evidence.

The other medical evidence also includes the consultative examination performed by Dr. Bruce Romeo, an SSA consultative examiner, who opined Rudolph can lift and carry 50 pounds occasionally, 20 pounds frequently, and 10 pounds continuously.  (R. 35, 237).  In contrast with Dr. Moyo's treatment records, Dr. Romeo's physical examination and diagnostic testing support his opinions.  As the ALJ observed, Dr. Romeo "noted no spasm or tenderness in the back," found "a normal range of motion  in the cervical spine and dorsolumbar spine," and "x-rays of the lumbar spine and the cervical spine were normal."  (R. 35, 231, 233, 235-36).  Therefore, the ALJ properly applied the regulations and law of this circuit in assigning great weight to Dr. Romeo's opinions because Dr. Romeo examined Rudolph, presented medical evidence and explanation supporting his opinion, and bolstered his opinions with diagnostic imaging.  *See Lewis*, 125 F.3d at1440; 20 C.F.R. § 404.1527(c).  Where, as here, Dr Romeo, unlike Dr. Moyo, provided medical support for his opinions, Rudolph's contention that the ALJ "uncritically gave [Dr. Bruce Romeo's] report great weight," (R. 7-8), is unavailing.

Ultimately, the ALJ properly considered the medical opinions and gave them weight in accordance with the regulations and law of this circuit.  Moreover, the ALJ clearly articulated his reasons for giving no weight to Dr. Moyo's opinions and for giving great weight to Dr. Romeo's opinions.  Because substantial evidence supports these findings, the ALJ committed no reversible error.

B.      Rudolph's Nonsevere Impairments

Rudolph next contends the ALJ did not properly consider his nonsevere impairments of hypertension, diabetes, hepatitis C, and inguinal hernia.  Doc. 9 at 10-11.  Unfortunately, contrary to Rudolph's contention that the ALJ "eliminat[ed] hypertension and diabetes from consideration as even severe impairments," doc. 9 at 10, the ALJ specifically addressed both.  In finding Rudolph's hypertension was not severe, the ALJ noted that treatment records from Dr. Moyo "reflect generally nothing more than medication management for hypertension."  (R. 33).  Likewise, the ALJ noted that treatment records show Rudolph was diagnosed with diabetes and "was started on medication for his blood sugar, with no further significant complications or functional impediments indicated."  *Id.*  Further, although Rudolph alleges the ALJ did not "address why an impairment of right inguinal hernia would not impact an individual's ability to bend and stoop as well as lift," doc. 9 at 11, he has pointed to no evidence showing that this condition, or any of his nonsevere conditions, caused restrictions greater than found by the ALJ.  This omission is fatal to Rudolph's argument because "the mere existence of these impairments does not reveal the extent to which they limit [Rudolph's] ability to work or undermine the ALJ's determination in that regard."  *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).  Moreover, it is Rudolph who "must show the effect of the impairment[s] on [his] ability to work."  *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005)

(unpublished) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986));

*Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the

burden of proving that he is disabled, and, consequently, he is responsible for

producing evidence in support of his claim.").  Based on this record, Rudolph has

failed to carry his burden of showing that the ALJ failed to consider his nonsevere

impairments, or that they caused restrictions greater than those found by the ALJ.

       C.    <u>Administrative Law of the Case</u>

       Finally, Rudolph contends that the ALJ was bound by the first ALJ's finding

that Rudolph was limited to less than a full range of light work because it had

"become the administrative law of the case."  Doc. 9 at 12-13.  In support of his

argument, Rudolph cites to cases applying the doctrine of administrative res judicata

to cases in which a second ALJ made findings inconsistent with a prior decision that

had become final.  *See* doc. 9 at 12-13 (*Bloodsaw v. Apfel*, 105 F.Supp. 2d (N.D. Ala.

2000); *Gallart v. Apfel*, No. 8:98CV762-T-17(E), 2000 WL 782955, (M.D. Fla. June

13, 2000); *Lively v. Sec. of HHS*, 820 F.2d 1391 (4th Cir. 1987); *Gavin v. Heckler*,

811 F.2d 1195 (8th Cir. 1987)).   However, Rudolph's reliance on this line of cases

misses the mark because the first ALJ's decision never became final because the

Appeals Council vacated it.  (R. 105).  When the Appeals Council remands a case, the

ALJ "may take any additional action that is not inconsistent with the Appeals

Council's remand order."  20 C.F.R. § 404.977(b).  There was no inconsistency here

with the second ALJ's reevaluation of Rudolph's RFC and the Appeals Council's remand order, which specifically required that "the hypothetical questions [to the vocational expert] should reflect the specific capacity/limitations *established by the records as a whole*." (R. 106). Under these circumstances, there is no rule of issue preclusion, and the second ALJ was not bound by the findings made by the first ALJ and was free to reevaluate Rudolph's RFC. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (When the Commissioner vacates and "remands cases for redetermination, there is no rule of issue preclusion."); *Houston v. Sullivan*, 895 F.2d 1012, 1015 (5th Cir. 1989) ("Once the case was remanded to the ALJ to gather more information about the extent of [the claimant's] disability, the ALJ was free to reevaluate the facts.").

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Rudolph is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done this 21st day of July, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE